# BOARD OF EDUCATION OF THE TOWN OF WALLINGFORD *v.* WALLINGFORD EDUCATION ASSOCIATION
## (SC 17141)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued May 17—officially released October 26, 2004

*Ronald Cordilico,* for the appellant (defendant).

*Janis M. Small,* for the appellee (plaintiff).

Opinion

PALMER, J. This declaratory judgment action arises out of a dispute between the plaintiff, the board of education of the town of Wallingford (board), and the defendant, Wallingford Education Association (association), the bargaining agent for teachers employed by the board, concerning the proper distribution of certain stock proceeds allegedly realized by the town of Wallingford (town) as a result of the demutualization of Anthem Blue Cross and Blue Shield (Anthem), the teachers' medical insurance provider. The association filed a grievance alleging, inter alia, that the board had breached the parties' collective bargaining agreement by failing to credit teachers who are members of the association with a share of the proceeds from the demutualization commensurate with contributions that those teachers had made toward their medical insurance premiums in accordance with the agreement. After the grievance was denied, the association sought to invoke the arbitration provisions of the collective bargaining agreement, and the board filed this action seeking a judgment declaring that the decision to deny the grievance is not arbitrable. The trial court rendered judgment for the board, concluding that the parties' dispute is not arbitrable because the subject matter of the grievance falls outside the purview of the collective bargaining agreement. On appeal, the association challenges the trial court's determination of nonarbitrability. We conclude that the parties' dispute is arbitrable and, therefore, reverse the judgment of the trial court.

The following undisputed facts and procedural history are necessary to our resolution of this appeal. The board and the association are parties to a collective bargaining agreement (agreement) that, inter alia, pre-

scribes the procedures for resolving grievances between the parties. That agreement defines the term "grievance" as "a claimed misapplication or misinterpretation of a specific provision(s) of th[e] [a]greement." If the grievant is dissatisfied with the resolution of a grievance, the agreement permits the grievant to file a request for arbitration in accordance with the rules and regulations of the American Arbitration Association.

On March 13, 2002, the association filed a grievance with the town's assistant superintendent for personnel (assistant superintendent) claiming a violation of appendix I of the agreement. The particular provision of the agreement that the association claimed had been violated concerns the payment of medical insurance premiums and provides in relevant part: "Teachers shall through payroll deductions pay ten . . . percent of the premium cost for the above medical insurance program, and such payment shall not exceed [$1000] for individual coverage, [$1550] for individual and spousal coverage, and [$1650] for family coverage. . . ." The association alleged, as part of its grievance, that "[t]eachers . . . who have not elected to waive insurance coverage . . . contribute an amount toward the cost of insurance premiums. The [board] has received a refund of insurance premium from Anthem . . . . This has been received in the form of the distribution of stock from Anthem to the [t]own . . . in the amount of (51,057) shares, valued as of [March 13, 2002, at] over $2.9 million at the selling price of shares . . . . The [b]oard has refused to distribute to qualifying teachers a proportional part of the value of these shares based upon the premium contributions set forth in the agreement between the [board] and the [association]. Such failure violates the [a]greement's [a]rticle ([a]ppendix I Medical) especially [the] subsection . . . which states [that] . . . teachers shall through payroll

deductions pay ten . . . percent of the premium
. . . ."

On July 15, 2002, the assistant superintendent denied the association's grievance, stating that "[t]he Anthem stock received by the [t]own . . . as part of the demutualization was not a refund of premium, the stock was not issued to the [b]oard, and there is no entitlement to that stock by the individual employees. . . . [In addition], the language of [a]ppendix I [of the agreement] does not contain any provision which would entitle any employees or retired employees to share in any alleged 'premium refunds,' even if such facts were the case, which they are not." (Citation omitted.)

On November 22, 2002, the association notified the board of its intent to file for arbitration. Thereafter, in December, 2002, the board commenced this declaratory judgment action seeking a determination that the association's grievance is not arbitrable. In support of its claim of nonarbitrability, the board alleged, inter alia, that "[a]ny questions pertaining to the demutualization of [Anthem], the distribution of shares of stock to the town or to the [board], the distribution of a 'proportional part of the value of these shares,' or the concept of 'teachers' proportional share of stock,' are not matters pertinent to, let alone controlled by specific provisions of the agreement . . . ."

The trial court concluded that the parties' dispute is not arbitrable. In so concluding, the trial court stated that there is "nothing [in appendix I of the agreement that] even remotely addresses the instant situation. The language [of that provision] has not been breached in any way and the dispute between the parties does not have an origin in the contract or a breach of a term." The court further concluded that "[t]he money realized by the town [as a result of the demutualization of Anthem] was obviously not anticipated by the parties to

the agreement and such occurrences were not included even indirectly in that agreement. To read this document to cover the instant claim would require the court to ignore the contract terms."

The trial court also addressed "what it perceive[d] as a further flaw in the [association's] position," namely, that "the funds [that] the [association] seek[s] to place in arbitration were paid to the town," which, the trial court stated, "[a]pparently . . . is not a party" to the agreement. The trial court concluded that such a dispute "over assets held and owned by [an entity] *not* a party to the . . . agreement . . . [is] not subject to the arbitration process."[1] (Emphasis in original.)

On appeal,[2] the association claims that the trial court improperly concluded that the parties' dispute over the distribution of the proceeds from the demutualization of Anthem is not arbitrable under the agreement. The association further contends that the trial court improperly assumed the role of fact finder in concluding that the dispute is not arbitrable on the alternative ground that those proceeds are "held and owned" by an entity, namely, the town, that is not a party to the agreement.[3] We agree with the association.

Our resolution of this appeal regarding the arbitrability of the parties' dispute is governed by well established

---

[1] The trial court emphasized that it was not addressing the merits of the association's grievance, namely, whether the association's members are entitled to a portion of the proceeds realized from the demutualization of Anthem.

[2] The association appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] With respect to this second contention, the association asserts, specifically, that, "[w]hether the [town], rather than the [board], received the shares from the Anthem . . . demutualization . . . is a fact to be determined by an arbitrator not the court. The only question before the court is whether the matter is arbitrable. By involving itself in the determination of substantive defenses that the [board] may raise, the court is engaging in fact finding, thereby usurping the role of the arbitrator."

principles. Whether a dispute is arbitrable generally is a question of law over which our review is plenary.[4] See, e.g., *Gaudet* v. *Safeco Ins. Co.*, 219 Conn. 391, 399, 593 A.2d 1362 (1991). "[B]ecause we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the positive assurance test as set out in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Under this test, judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Internal quotation marks omitted.) *White* v. *Kampner*, 229 Conn. 465, 472–73, 641 A.2d 1381 (1994).

The sole issue presented by this appeal is whether appendix I of the agreement, which requires teachers to pay a specified percentage of the premium cost for medical insurance up to a certain maximum amount, is susceptible of an interpretation that covers the parties' dispute regarding the distribution of proceeds realized from the demutualization of Anthem. The association's grievance is predicated on its claim that those proceeds represent a refund of premiums, and, because the members of the association are required to pay a percentage of those premiums under the agreement, they are entitled to a share of that refund commensurate with the

[4] Of course, the parties to a contract that contains an arbitration provision are free to agree to arbitrate the issue of whether a particular dispute is arbitrable. See, e.g., *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 467, 576 A.2d 153 (1990). Neither party claims, however, that the issue of whether the dispute in the present case is arbitrable is itself a matter reserved for arbitration under the parties' agreement.

portion of the premiums that they have paid. In other words, the association contends that the proceeds realized by the demutualization of Anthem represent a reduction in the cost of medical insurance that Anthem provides and, consequently, that its members are entitled to the benefit of that cost reduction in accordance with their proportional share of the premium payments.

Because appendix I of the agreement sets forth the percentage that teachers are required to pay toward their medical insurance premiums, any refund of the payments to which they may be entitled directly implicates that provision of the agreement. Indeed, to the extent that those teachers are entitled to a refund of a percentage of their premium payments in light of the proceeds realized by the demutualization of Anthem, appendix I *governs* the calculation of those refunds. In such circumstances, it simply cannot be said with "positive assurance" that appendix I of the agreement is not susceptible of an interpretation that encompasses the issue raised by the association's grievance. (Internal quotation marks omitted.) Id., 473.

The fact that the distribution of the proceeds from the demutualization of Anthem might not have been anticipated by the parties is irrelevant to our determination of the issue presented. Collective bargaining agreements, like many other contracts, typically contain provisions that are intended to have broad applicability irrespective of whether a particular event or occurrence specifically was contemplated by one or both of the parties. Furthermore, we agree with the association that whether the town is a party to the agreement, and, if not, what affect that might have on the parties' dispute, are issues to be addressed, at least initially, by the arbitrator. To conclude otherwise would needlessly undermine the salutary purpose of the agreement's arbitration provision, namely, "to avoid the formalities, delay, expense and vexation of ordinary litigation."

(Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 246 Conn. 1, 11, 715 A.2d 748 (1998).

The judgment is reversed and the case is remanded with direction to render judgment declaring that the parties' dispute regarding the distribution of proceeds realized from the demutualization of Anthem Blue Cross and Blue Shield is arbitrable.

In this opinion the other justices concurred.