# REGION 14 BOARD OF EDUCATION *v.* NONNEWAUG TEACHERS' ASSOCIATION
## (SC 17138)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued December 1, 2004—officially released March 1, 2005

*Ronald Cordilico,* for the appellant (defendant).

*William R. Connon,* with whom, on the brief, was *Mark J. Sommaruga,* for the appellee (plaintiff).

### Opinion

PER CURIAM. This declaratory judgment action arises out of a dispute between the plaintiff, the region 14 board of education (board),[1] and the defendant, Nonnewaug Teachers' Association (association), which is the bargaining agent for teachers employed by the board. The action concerns the proper distribution of the value of certain shares of stock received by the board as a result of the demutualization of Anthem Blue Cross and Blue Shield (Anthem), the teachers' medical insurance provider. The association filed a grievance alleging that the board had violated the parties' collec-

---

[1] The plaintiff is a regional school district organized under General Statutes § 10-39 et seq.

tive bargaining agreement (agreement) by failing to distribute to qualifying teachers a proportional part of the value of the shares on the basis of the premium contributions provided for in the agreement. The board denied the grievance and the association invoked the agreement's arbitration provisions. The board then commenced this action seeking, inter alia, a judgment declaring that the grievance was not arbitrable. The trial court rendered judgment in favor of the board on the ground that the dispute did not arise out of a specific provision of the agreement. This appeal followed.[2] We conclude that the dispute is arbitrable and, therefore, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The association and the board are parties to a collective bargaining agreement that prescribes the procedures for resolving grievances between the parties. The agreement defines the term "grievance" as, inter alia, "a complaint by a member or members of the bargaining unit regarding an alleged violation of a specific provision or provisions of this [a]greement which relates to or involves the grieving teacher or teachers." On March 6, 2002, the association filed a grievance in which it claimed that the board had violated article V of the agreement[3] by failing to distribute to qualifying members of the association a proportional part of the value of the shares received by the board as a result of Anthem's demutualization.

---

[2] The association appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] Article V (A) (1) of the agreement provides in relevant part: "The [board] shall pay 95 [percent] of the cost of the following health insurance for all eligible teachers and dependent family members including the unmarried children up to age 25 and participating teachers shall pay 5 [percent] of such cost. Beginning [July 1, 2001] the Board's contribution shall be 92.5 [percent] and the teacher's shall be 7.5 [percent]; beginning [July 1, 2002] the Board's contribution shall be 90 [percent] and the teacher's shall be 10 [percent]."

After the board denied the grievance, the association initiated arbitration proceedings with the American Arbitration Association, pursuant to the arbitration provision of the agreement. The board then filed this action seeking, inter alia, a judgment declaring that the dispute is not arbitrable because the board had not violated any specific provision of the agreement. The trial court concluded that the dispute was not arbitrable, reasoning that "[t]he receipt of stock by the board in the demutualization process is a one-time, unexpected distribution of stock which neither party could have anticipated when the contract was executed. Because the receipt of the stock was unanticipated, the parties could not have agreed to arbitrate about it." The association then appealed from the trial court's ruling.

On appeal, the association claims that the trial court improperly determined that the dispute is not arbitrable because: (1) the board failed to meet its burden of establishing that the grievance met the "positive assurance" test; see *White* v. *Kampner*, 229 Conn. 465, 473, 641 A.2d 1381 (1994) ("[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" [internal quotation marks omitted]); and (2) the trial court usurped the fact finding role of the arbitrator in deciding that the shares of stock received by the board were not a return on premium.

After this appeal was filed, but before oral argument, this court issued its decision in *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 635, 858 A.2d 762 (2004), in which we addressed an issue that is seemingly indistinguishable from the issue in the present case, namely, whether teachers employed by the board of education of the town of Wallingford were entitled, under the health insurance provision of their collective bargaining agreement, to a portion of the

value of shares of stock received by the town as a result of Anthem's demutualization. Thereafter, we ordered the parties in the present case to be prepared to address at oral argument the impact of that decision on the association's claim that the parties' dispute is arbitrable. The association argued at oral argument that the collective bargaining agreement at issue in *Wallingford Education Assn.* is substantially identical to the agreement at issue in this case, and that this case is, therefore, controlled by *Wallingford Education Assn.* The board argued that this case is distinguishable from *Wallingford Education Assn.* because the trial court in this case found that the *arbitration clause* in the agreement is not susceptible of an interpretation that covers the grievance, while the trial court in *Wallingford Education Assn.* found that the *insurance provision* of the collective bargaining agreement was not implicated by the Wallingford education association's claim because that provision did not "remotely address" the demutualization circumstance. The board argued that the positive assurance doctrine applies to arbitration agreements, not to the substantive terms of the underlying contract. The board further argued that, in the present case, unlike in *Wallingford Education Assn.*, the parties stipulated that "the 'demutualization' of [Anthem] and the distribution of shares of stock . . . is the same event which the grievance describes as a 'refund of insurance premium.' " Accordingly, the board argued, it was established in this case, unlike in *Wallingford Education Assn.*, that the association had mischaracterized the demutualization as a refund of insurance premium.

We are not persuaded by the board's arguments. The essence of our holding in *Wallingford Education Assn.* was that the insurance provision of the collective bargaining agreement at issue in that case, which is substantially similar to the insurance provision of the

agreement in the present case, was "susceptible of an interpretation that encompasses the issue raised by the association's grievance." *Board of Education* v. *Wallingford Education Assn.*, supra, 271 Conn. 640. Accordingly, the issue raised by the association met the definition of "grievance" in the collective bargaining agreement[4] and was, therefore, covered by the arbitration provision of the agreement. See id., 636, 640. We specifically found that the trial court's determination that the distribution of the proceeds from the demutualization could not have been anticipated by the parties was irrelevant because collective bargaining agreements "typically contain provisions that are intended to have broad applicability irrespective of whether a particular event or occurrence specifically was contemplated by one or both of the parties." Id., 640. The same reasoning applies in the present case. Accordingly, we conclude that this case is governed by our decision in *Wallingford Education Assn.* and, therefore, that the trial court improperly determined that the dispute is not arbitrable under the arbitration provision of the agreement.[5]

---

[4] In *Wallingford Education Assn.*, the collective bargaining agreement between the parties defined grievance as: "a claimed misapplication or misinterpretation of a specific provision(s) of th[e] [a]greement." (Internal quotation marks omitted.) *Board of Education* v. *Wallingford Education Assn.*, supra, 271 Conn. 636.

[5] We also are not persuaded by the board's argument that, under the doctrine of administrative estoppel, the decision of the commissioner of the Indiana department of insurance that the board was a "statutory member" of the mutual insurance company and, therefore, entitled to receive shares of Anthem stock as a result of the demutualization bars the association's claim that individual teachers are entitled to a share of the value of the stock. The Indiana commissioner simply did not address the issue raised by the association in the present case. Accordingly, the doctrine of administrative estoppel does not apply. See *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 318, 307 A.2d 155 (1972) (doctrine of res judicata applies to "determinations of an administrative agency in a proper case, generally where the determinations are made for a purpose similar to those of a court and in proceedings similar to judicial proceedings"), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); see also *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991) (collateral estoppel

The judgment is reversed and the case is remanded with direction to render judgment declaring that the parties' dispute regarding the distribution of proceeds realized from the demutualization of Anthem is arbitrable.

prohibits relitigation of issue when issue was actually litigated and necessarily determined in prior action).