CITY OF NEW BRITAIN *v.* AFSCME, COUNCIL 4, LOCAL 1186
(AC 30597)

Lavine, Beach and Alvord, Js.

---

Argued January 6—officially released June 8, 2010

*Mary C. Pokorski,* associate city attorney, for the appellant (plaintiff).

*J. William Gagne, Jr.,* with whom, on the brief, was *Kimberly A. Cuneo-DeLaura,* for the appellee (defendant).

LAVINE, J. The plaintiff, the city of New Britain, appeals from the judgment of the trial court denying its application to vacate the arbitration award in favor of the defendant, AFSCME, Council 4, Local 1186. The plaintiff claims that the court improperly denied its application because (1) the issue was not arbitrable, and (2) (a) the submission to the arbitration board was restricted and (b) the board exceeded the scope of the submission in fashioning the award. We affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the court in its memorandum of decision, are relevant to the plaintiff's appeal. "[The plaintiff] and [the defendant] negotiated a collective bargaining agreement ([agreement]) running from July 1, 2003, to June 30, 2008. In January, 2006, [the plaintiff] and [the defendant] negotiated a number of upgrades that had the effect of increasing the pay of certain members of the bargaining unit. Thereafter, upon calculating the pay rate for certain of these employees, it was discovered that the supervisors of these employees, classified as 'foremen,' were paid a differential that was less than 5 percent above the rate paid to the employees whom they supervised. The civil service regulations of New Britain provide that persons classified as foremen shall be paid at least 5 percent more than the employees whom they supervise.

"The foremen, as a class, filed an unfair labor practice complaint, which was resolved via an agreement with [the plaintiff] on September 8, 2006. That settlement agreement provided: '[The plaintiff] hereby agrees that [the defendant] may file a grievance regarding the issue of [f]oremen being paid less than 5 [percent] more than their subordinates. This grievance shall be filed directly at arbitration. [The plaintiff] and [the defendant] further

agree that either party may raise [any] claim or defense they could have made had they filed at step [one], including the issue of arbitrability but not including timeliness. In consideration of the above, [the defendant] agrees to the withdrawal and closing of [the unfair labor practice case].'

"The matter was thereafter submitted to arbitration in two phases. In the first submission to the state board of mediation and arbitration, [the plaintiff] argued that the matter was not arbitrable at all. [The plaintiff] pointed to a memorandum of understanding that had been signed with [the defendant] at the time of the January, 2006 upgrades, which read: 'The parties hereby mutually agreed that the list of proposed upgrades on the attached pages (dated [January 18, 2006]) would go into effect retroactive to January 1, 2006. Any omissions, adjustments, corrections, etc. can only be made with the signature of both parties. The parties agree that arbitration shall NOT be used to redress all upgrades that have not been resolved in the negotiations.' [Emphasis in original.]

"The board heard the parties and rendered an award that found that the matter of the claimed inadequacy in the pay differential for the foremen class was indeed arbitrable. Recognizing that the foremen pay differential issue was one that neither side had foreseen, and was an issue that was outside the scope of upgrades that would normally have been the subject of the collective bargaining process, as opposed to the grievance and arbitration process, the board found that the 2006 settlement agreement, read in conjunction with the [agreement] and the letter agreement regarding the upgrades, did not prohibit arbitration of the dispute.

"The parties then moved to the second phase of the arbitration. After hearing evidence, the board determined that the civil service rules that mandated a 5

percent pay differential for supervisors applied to this situation. This finding found support in the actual language of the [agreement], article 2.0, that affirms any other 'statute, ordinance, regulation or other lawful provision over matters involving the municipality' was to be followed as long as it did not conflict with the specific provision of the [agreement]. The board found that the merit rules of the civil service commission set forth, as a guiding principal, that supervisors are to be paid at a higher rate than their subordinates. The board found that there was nothing about this principal that conflicted with the provisions of the [agreement] and that, indeed, the two provisions could be read and applied in concert.

"Based on the evidence, the board found that it was clearly the intention of the parties to incorporate the language of the civil service rules into the salary schedules used by the parties. Moreover, the board credited evidence that the foreman group that constituted the class about whom the arbitration was filed were all actually supervisory personnel entitled to the benefit of the supervisors' pay differential as prescribed in the civil service rules."

On February 29, 2008, the plaintiff filed an application to vacate the arbitration award on the ground that "the arbitration panel exceeded its powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made . . . ." See General Statutes § 52-418 (a) (4). The court denied the application on November 21, 2008. This appeal followed.

I

The plaintiff's first claim on appeal is that the court erred in denying its application to vacate the arbitration award because the arbitration board improperly found that the issue was arbitrable. We disagree.

"Whether a particular dispute is arbitrable is typically a question for the court. . . . It is well established [however] that arbitration is a matter of contract and that parties may agree to have questions concerning the arbitrability of their disputes decided by a separate arbitrator. . . . In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls and determines whether the arbitrability of a dispute is for the court or the arbitrators. . . . The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration . . . ." (Internal quotation marks omitted.) *Wallingford* v. *Wallingford Police Union Local 1570*, 45 Conn. App. 432, 436, 696 A.2d 1030 (1997).

"In *Metropolitan District Commission* v. *AFSCME, Council 4, Local 3713*, 35 Conn. App. 804, 811 n.6, 647 A.2d 755 (1994), this court recognized that an arbitrator cannot find a dispute arbitrable if language in the contract indicates that it is not. Furthermore, in *White* v. *Kampner*, 229 Conn. 465, 641 A.2d 1381 (1994), our Supreme Court stated: We initially note that, because we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the positive assurance test as set out in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Under this test, judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (Internal quotation marks omitted.) *Sacred Heart*

*Teachers' Assn.* v. *Sacred Heart High School Corp.,* 65 Conn. App. 195, 199–200, 782 A.2d 227 (2001).

Here, the plaintiff is the party that was reluctant to arbitrate this grievance. It argues that the January, 2006 memorandum of understanding specifically states: "The parties hereby mutually agreed that the list of proposed position upgrades on the attached pages (dated [January 18, 2006]) would go into effect retroactive to January 1, 2006. Any omissions, adjustments, corrections, etc. can only be made with the signature of both parties. The parties agree that arbitration shall NOT be used to redress all upgrades that have not been resolved in the negotiations." Although the parties originally stated that arbitration would not be used to redress the issue of upgrades, they later signed, on September 8, 2006, a settlement agreement that provides: "[The plaintiff] hereby agrees that [the defendant] may file a grievance regarding the issue of Foremen being paid less than 5 [percent] more than their subordinates. This grievance shall be filed directly at arbitration. [The plaintiff] and [the defendant] further agree that either party may raise [any] claim or defense they could have made had they filed at step [one], including the issue of arbitrability but not including timeliness. In consideration of the above, [the defendant] agrees to the withdrawal and closing of [the unfair labor practice case]." It appears clear that the plaintiff, eight months after agreeing that arbitration should not be used to redress the upgrades, agreed to arbitrate the foremen's grievance as part of its settlement agreement with the defendant. In these circumstances, we cannot say with positive assurance that the parties intended to exclude the issue from arbitration.

## II

The plaintiff next claims that (1) the submission to the arbitration board was restricted and (2) the board

exceeded the scope of its authority in fashioning the award. Specifically, it argues that the submission was restricted to the question of whether the plaintiff violated §§ 11.0 or 2.0 of the collective bargaining agreement by not upgrading the position of foreman.[1] The plaintiff further contends that the board should have considered only the collective bargaining agreement, not the civil service rules, and that the board failed to rely on General Statutes § 7-474 (f),[2] which provides that a contractual agreement prevails over a

[1] Article 2.0 of the collective bargaining agreement provides: "Unless expressly limited or relinquished below by a specific section of this Agreement, the rights, power and authority held by [the plaintiff] and any of its Departments, Agencies or Boards pursuant to any Charter, general or special statute, ordinance, regulation or other lawful provision over matters involving the municipality, and the complete operational control over the policies, practices, procedures and regulations with respect to its employees shall remain vested solely and exclusively in [the plaintiff]."

Article 11.0 of the collective bargaining agreement provides: "Wages shall be increased in accordance with the attached compensation plan.

"An employee, after having served one (1) year (12 months) in grade will advance to the next step of the pay plan. The implementation of this higher rate will become effective the first full workweek occurring after such twelve (12) month period, provided Civil Service requirements governing such increments have been met. Should any employee be denied their step increase, it shall be grievable."

[2] General Statutes § 7-474 (f) provides: "Where there is a conflict between any agreement reached by a municipal employer and an employee organization and approved in accordance with the provisions of sections 7-467 to 7-477, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any charter, special act, ordinance, rules or regulations adopted by the municipal employer or its agents such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen, or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the Policemen and Firemen Survivors' Benefit Fund, the terms of such agreement shall prevail; provided, if participation of any employees in said system or said fund is effected by such agreement, the effective date of participation in said system or said fund, notwithstanding any contrary provision in such agreement, shall be the first day of the third month following the month in which a certified copy of such agreement is received by the Retirement Commission, or such later date as may be specified in the agreement."

civil service rule in the event of a conflict. The board found that the submission was unrestricted, and the court agreed. We conclude that the award in this case arose out of an unrestricted submission and that the board's award conformed to the submission.

A

"Our analysis is guided by the well established principles of law governing consensual arbitration. Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators. . . . The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted. . . .

"Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . . The resulting award can be reviewed, however, to determine if the award conforms to the submission. . . . Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . The significance, therefore, of a determination that

an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 109–10, 779 A.2d 737 (2001).

In the present case, the September 8, 2006 settlement agreement between the plaintiff and the defendant constituted the submission to arbitration. The parties agreed that the defendant "may file a grievance regarding the issue of Foremen being paid less than 5 [percent] more than their subordinates." The issue was characterized by the board as: "Did [the plaintiff] violate Sections 11.0 and/or 2.0 of the collective bargaining agreement by not upgrading the position of Foreperson? If so, what shall the remedy be?"

The plaintiff contends that the submission pertained only to §§ 2.0 and 11.0 of the agreement and that the submission was thus restricted to the agreement. In an analogous line of cases regarding arbitration awards, our Supreme Court consistently has concluded that "submissions that require arbitrators to determine whether a party has violated a particular section of a collective bargaining agreement constituted unrestricted submissions. For example, in *Bic Pen Corp.* v. *Local No. 134*, [183 Conn. 579, 581 n.1, 440 A.2d 774 (1981)], the issue submitted for arbitration was 'whether the Company violated [article] IV (n) or other relevant provisions of the collective bargaining agreement by failing to distribute overtime equally among all toolmakers and, if so, what shall the remedy

be?' The court concluded that '[s]ince neither the submission formulated by the arbitrator, nor the issues suggested by the parties, contained conditional language, the submission at issue is unrestricted.' " *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 111–12.

Like the submission in *Bic Pen Corp.*, the submission in the present case does not contain any conditional language. It merely contemplates whether the plaintiff violated §§ 11.0 or 2.0 of the agreement by not increasing the pay of the foremen. In the absence of such conditional language, we cannot agree with the plaintiff's characterization of this submission as restricted. Having concluded that the submission was unrestricted, we must now consider whether the board exceeded the scope of its authority in fashioning the award.

B

"The well established general rule is that [w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings. . . .

"When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they

must be bound by those limits. . . . An application to vacate or correct an award should be granted where an arbitrator has exceeded his power. In deciding whether an arbitrator has exceeded his power, we need only examine the submission and the award to determine whether the award conforms to the submission. . . .

"A challenge of the arbitrator's authority is limited to a comparison of the award to the submission. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . The party challenging the award bears the burden of producing evidence sufficient to demonstrate a violation of [General Statutes] § 52-418." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 114–15.

In light of our well settled precedent, we decline to consider the plaintiff's claim that the board incorrectly applied § 7-474 (f). The question we must resolve is whether the award conforms to the submission. Here, the submission asked whether the plaintiff violated §§ 11.0 or 2.0 of the agreement by not upgrading the pay classification for the foremen. The board issued an award that provides: "[The plaintiff] violated [§] 11.0 of the collective bargaining agreement by not upgrading the position of Foreperson.

"[The plaintiff] shall immediately upgrade the classifications of Parks Foreperson, Public Works Foreperson, Water Foreperson and Water Foreperson (Meter) in

accordance with the language of Civil Service Merit Rule XIV, [§] B.1.d. The personnel occupying the above listed foreperson classifications shall receive the monetary difference between the wages received and their increased wages retroactive to September 29, 2006, the date the grievance was received by the Personnel Director." The award conformed to the scope of the submission in ruling that the plaintiff violated the agreement and awarding the aggrieved class an increase in pay and back wages. The board in no way exceeded the scope of its authority in fashioning this award.

The judgment is affirmed.

In this opinion the other judges concurred.