43 A.3d 143 (2012)
304 Conn. 639
CITY OF NEW BRITAIN
v.
AFSCME, COUNCIL 4, LOCAL 1186.
No. 18671.
Supreme Court of Connecticut.
Argued December 6, 2011.
Decided May 1, 2012.
*146 Mary C. Pokorski, associate city attorney, for the appellant (plaintiff).
J. William Gagne, Jr., West Hartford, with whom, on the brief, was Kimberly A. Cuneo, for the appellee (defendant).
ROGERS, C.J., and NORCOTT, PALMER, ZARELLA, McLACHLAN and HARPER, Js.
*147 ROGERS, C.J.
The issue in this certified appeal[1] is whether the plaintiff, the city of New Britain, agreed to arbitrate a dispute with certain city employees, classified as foremen, regarding an alleged violation of the city's civil service rules. The plaintiff appeals from the judgment of the Appellate Court affirming the trial court's denial of its application to vacate the arbitration award in favor of the defendant, AFSCME, Council 4, Local 1186.[2]New Britain v. AFSCME, Council 4, Local 1186, 121 Conn.App. 564, 570, 997 A.2d 560 (2010). The plaintiff claims that the Appellate Court improperly concluded that it agreed to arbitrate the foremen's dispute in a settlement agreement between the parties. Id. We agree with the plaintiff that it never agreed to arbitrate the matter and, accordingly, we reverse the judgment of the Appellate Court.
The following facts are undisputed. The plaintiff and the defendant negotiated a collective bargaining agreement, effective July 1, 2003, to June 30, 2008. Article XIV, § 11.5, of the collective bargaining agreement provides: "The collective bargaining process will be the sole means for submitting requests for upgrading and/or title changes." Article XIV, § 14.9(F), of the collective bargaining agreement provides: "Effective [July 1, 2005] the parties agree that arbitration shall be used to redress all upgrades that have not been resolved in negotiations."
In January, 2006, the plaintiff and the defendant negotiated a number of upgrades that increased the pay of certain city employees. New Britain v. AFSCME, Council 4, Local 1186, supra, 121 Conn.App. at 566, 997 A.2d 560. The foremen did not receive upgrades during these negotiations, but the subordinate employees whom they supervise did.[3] To memorialize their agreement, the parties signed a memorandum of understanding, which provided in relevant part: "The parties hereby mutually agree that the list of proposed upgrades on the attached pages (dated [January 18, 2006]) would go into effect retroactive to January 1, 2006. Any omissions, adjustments, corrections, etc. can only be made with the signature of both parties. The parties agree that arbitration shall NOT be used to redress all upgrades that have not been resolved in the negotiations." (Internal quotation marks omitted.) Id., at 567, 997 A.2d 560.
Thereafter, it was discovered that, as a result of these upgrades, the foremen were paid at a rate less than 5 percent above the rate paid to the subordinates, in violation of the rules of the city's civil service commission. The civil service rule at issue provides that persons classified as foremen shall be paid at least 5 percent more than the employees whom they supervise. The foremen, as a class, filed an unfair labor *148 practice complaint regarding the violation of the civil service rules. The defendant, on behalf of the foremen, then entered into a settlement agreement with the plaintiff on September 8, 2006. That settlement agreement provided: "[The plaintiff] hereby agrees that [the defendant] may file a grievance regarding the issue of [f]oremen being paid less than 5 [percent] more than their subordinates. This grievance shall be filed directly to arbitration. [The plaintiff] and [the defendant] further agree that either party may raise any claim or defense they could otherwise have made had they filed at step [one], including the issue of arbitrability but not including timeliness. In consideration of the above, [the defendant] agrees to the withdrawal and closing of [the unfair labor practice action]."
The matter was thereafter submitted to arbitration in two phases. In the first submission to the state board of mediation and arbitration (board), the plaintiff argued that the matter was not arbitrable at all. New Britain v. AFSCME, Council 4, Local 1186, supra, 121 Conn.App. at 566-67, 997 A.2d 560. In support of its claim, the plaintiff referred the arbitrators to the arbitration provision in the memorandum of understanding. Id. Specifically, the plaintiff claimed that it never agreed to arbitration because the memorandum of understanding specifically prohibited arbitration regarding upgrades not resolved therein, and the settlement agreement specifically reserved the plaintiff's right to raise the defense of arbitrability.
The board issued an award concluding that the matter was arbitrable. While recognizing that no foremen positions were at issue in the upgrades that had been negotiated for subordinates, the board concluded that it was "very questionable whether the prohibition against the use of arbitration [in the memorandum of understanding] was meant to concern the unforeseen consequences of an automatic upgrade to the foremen through reliance on the [c]ivil [s]ervice [r]ules." The board also concluded, in light of the settlement agreement, that it would be unreasonable to conclude that the matter was not arbitrable.
The parties then moved to the second phase of the arbitration. After hearing evidence, the board determined that the civil service rule mandating a 5 percent pay differential for supervisors applied in the present case. New Britain v. AFSCME, Council 4, Local 1186, supra, 121 Conn.App. at 567-68, 997 A.2d 560. The board further determined that the civil service rule did not conflict with the provisions of the parties' collective bargaining agreement. Id., at 568, 997 A.2d 560. The board thus concluded in the defendant's favor that the parties intended to incorporate the language of the civil service rules into their collective bargaining agreement, and that the two provisions should therefore be read and applied in concert. Id.
On February 29, 2008, the plaintiff filed an application to vacate the arbitration award pursuant to General Statutes § 52-418(a)(4),[4] claiming that the arbitrators improperly *149 concluded that the dispute was subject to arbitration and, on the merits, that the foremen were entitled to be paid a rate 5 percent above the employees they supervise. The trial court denied the application, concluding that it was not empowered to overturn the arbitrators' decisions, even if their interpretation of the parties' agreements was wrong.
The plaintiff appealed to the Appellate Court, which, applying the positive assurance test,[5] concluded that "eight months after agreeing that arbitration should not be used to redress the upgrades, [the plaintiff] agreed to arbitrate the foremen's grievance as part of its settlement agreement with the defendant." Id., at 570, 997 A.2d 560. Thus, because the Appellate Court concluded that it could not state "with positive assurance that the parties intended to exclude the issue from arbitration," it affirmed the judgment of the trial court. Id. This appeal followed.
The plaintiff claims that the Appellate Court improperly affirmed the trial court's denial of its motion to vacate. First, the plaintiff claims that collective bargaining negotiations were a condition precedent to arbitration under the collective bargaining agreement and the memorandum of understanding, and that the mandatory negotiations did not take place. Second, the plaintiff asserts that the memorandum of understanding clearly evidenced the parties' intent not to arbitrate this dispute and the settlement agreement merely allowed the defendant to file a grievance in arbitration while specifically reserving the plaintiff's right to raise nonarbitrability as a defense. The defendant, on the other hand, claims that the condition precedent was satisfied when the parties negotiated the upgrades set forth in the memorandum of understanding, and, regardless, the plaintiff subsequently agreed to arbitrate the pay differential dispute in the subsequent settlement agreement.[6] For the reasons we set forth in the following discussion, we agree with the plaintiff that the foremen's dispute was not arbitrable and, accordingly, reverse the judgment of the Appellate Court.
We first determine our standard of review. In doing so, we note that both parties assert in their briefs that our standard of review in this case is limited. Indeed, when reviewing a denial of a motion *150 to vacate under § 52-418(a)(4), we generally reverse a decision upholding the denial only if we conclude that the arbitrator acted in manifest disregard of the law.[7] Because, however, the plaintiff appeals from the arbitrators' determination that the dispute was arbitrable, rather than from the award itself, we must examine more closely the question of our standard of review.
"[A party] can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, [it] has agreed so to do. . . . Because arbitration is based on a contractual relationship, a party who has not consented cannot be forced to arbitrate a dispute." (Citation omitted; internal quotation marks omitted.) MBNA America Bank, N.A. v. Boata, 283 Conn. 381, 386, 926 A.2d 1035 (2007). We recently noted that three distinct issues arise in cases such as the present one: (1) whether the parties agreed to arbitrate the underlying merits of the case, i.e., whether the matter is arbitrable; (2) who has the primary authority to decide that questionthe arbitrator or the court; and (3) if the court has the primary authority to decide that question, whether the parties engaged in conduct that precludes judicial review of the arbitrator's decision on that matter.[8]Bacon Construction Co. v. Dept. of Public Works, 294 Conn. 695, 709-10, 987 A.2d 348 (2010).
In accordance with these principles, in determining our standard of review, we first examine who had the primary authority to resolve the question of arbitrability in the present case: the court or the arbitrators. It is well established that, absent the parties' contrary intent, it is the court that has the primary authority to determine whether a particular dispute is arbitrable, not the arbitrators. Id., at 714, 987 A.2d 348. Thus, courts generally review challenges to an arbitrator's determination of arbitrability de novo.[9] Id.; see also White v. Kampner, 229 Conn. 465, 472, 641 A.2d 1381 (1994).
Because, however, "[a]rbitration is a creature of contract"; (internal quotation marks omitted) State v. Philip Morris, Inc., 289 Conn. 633, 642, 959 A.2d 997 (2008); parties may agree to arbitrate the question of arbitrability; White v. Kampner, supra, 229 Conn. at 472, 641 *151 A.2d 1381. "It is well established . . . that parties may agree to have questions concerning the arbitrability of their disputes decided by a separate arbitrator. . . . In apportioning, between the court and the arbitrators, the responsibility for determining which disputes are arbitrable, the language of the contract controls. . . ." Wallingford v. Wallingford Police Union Local 1570, Council 15, AFSCME, 45 Conn.App. 432, 436, 696 A.2d 1030 (1997). When deciding whether a party has agreed that an arbitrator should have the sole authority to decide arbitrability, we must "not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "In this manner the law treats silence or ambiguity about the question who (primarily) should decide arbitrability differently from the way it treats silence or ambiguity about the question whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement. . . ." (Emphasis in original; internal quotation marks omitted.) Id., at 944-45, 115 S.Ct. 1920. In this state, the intention to have arbitrability solely determined by an arbitrator "can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as all questions in dispute and all claims arising out of the contract or any dispute that cannot be adjudicated." (Internal quotation marks omitted.) White v. Kampner, supra, 229 Conn. at 472, 641 A.2d 1381.
We review the documents at issue in the present case in chronological order. First, the arbitration provision in the collective bargaining agreement clearly did not contain an agreement by the parties to submit the issue of arbitrability to the arbitrator's sole authority. Likewise, that provision did not contain broad terms from which we may infer such intent. Rather, by providing in article XIV, § 14.9(F), of the collective bargaining agreement that "arbitration shall be used to redress all upgrades that have not been resolved in negotiations"; (emphasis added); the arbitration provision limits the submission to the arbitrator to the merits of the dispute. According to this provision, the arbitrator is given the authority to resolve disputes regarding pay upgrades, but not the overall question of arbitrability. The memorandum of understanding further restricted the scope of the arbitrator and indicated in no way that the parties intended to submit the question of arbitrability to the arbitrator for final determination. Finally, the settlement agreement explicitly indicated only that the defendant could file a grievance in order to arbitrate the underlying question of the civil service rule violation.[10] For all of these reasons, we conclude that the trial court had the primary authority in the present case to determine whether the foremen's pay differential dispute was arbitrable.[11]
*152 This conclusion does not end the inquiry into our appellate standard of review. Having determined that the parties did not clearly and unmistakably indicate in any of the three documents an intention to waive judicial review of the question of arbitrability, we next turn to the third inquiry set forth in Bacon Construction Co., which consists of two parts: preservation and waiver. Bacon Construction Co. v. Dept. of Public Works, supra, 294 Conn. at 710, 987 A.2d 348. A party preserves its right to judicial review of an arbitrator's conclusion regarding arbitrability by raising that issue before the arbitrator. Id. "A party who [makes] such a challenge nonetheless may waive its right to judicial review by agreeing to vest the arbitrator with authority to decide" whether the matter is arbitrable. Id. In order to obtain judicial review of the arbitrator's arbitrability determination, therefore, a party must both preserve its claim and refrain from activities that would, in essence, estop that party from asserting its claim at a later time.
The plaintiff asserts two theories in support of its appeal. First, it claims that the collective bargaining agreement and the memorandum of understanding require negotiations as a condition precedent to arbitration. Second, it claims that the memorandum of understanding evidences the parties' intent not to arbitrate the foremen's dispute, and that the settlement agreement did not evidence a contrary intent. Because the record reveals that the plaintiff did not raise its first claim before the arbitrators, we conclude that the plaintiff did not preserve this claim. With respect to its second claim, however, the plaintiff argued before the arbitrators that the memorandum of understanding clearly *153 evidenced the parties' intent not to arbitrate. Having preserved one of its claims that it never agreed to arbitrate, the plaintiff is therefore entitled to de novo judicial review of that claim so long as it did not engage in behavior precluding such review.
As we have indicated, the plaintiff never waived its right to judicial review by agreeing to have the issue of arbitrability decided solely by the arbitrators. In Bacon Construction Co. v. Dept. of Public Works, supra, 294 Conn. at 710, 987 A.2d 348, we concluded that the defendant waived its right to judicial review by agreeing that the arbitrator would be the final authority on the question of arbitrability. Specifically, in its answering statement to the arbitrator, the defendant in that case had stated: "The actual issues in this proceeding are [the plaintiff's] delay and disruption claims, and [the defendant's] special defenses that: [the plaintiff's] claims are barred by the doctrine of sovereign immunity [and thus are not arbitrable]. . . . Those issues may be heard and fully and finally determined by this arbitration." (Emphasis in original; internal quotation marks omitted.) Id., at 711, 987 A.2d 348. This unequivocal declaration by the defendant that the arbitrator would determine arbitrability "`fully and finally,'" demonstrated that "the defendant intended to be bound by the arbitrator's decision and constitute[d] a waiver of judicial review of the issue of arbitrability." Id. Contrastingly, as we noted previously, the settlement agreement in the present case did not evidence any intention by the parties to submit the question of arbitrability to the arbitrators for their full and final decision on the matter. Finding no indication that the parties intended to contract out of judicial review in the present case, we review the plaintiff's claim de novo in accordance with the principle that courts have plenary review over the question of arbitrability absent a showing of the parties' contrary intent.
Turning to the merits of the appeal, the plaintiff claims that it never agreed to arbitrate the foremen's dispute. Specifically, the plaintiff contends that the memorandum of understanding evidenced its intention to avoid arbitration, and that the settlement agreement preserved its right to raise the defense of nonarbitrability. The defendant responds that, regardless of the memorandum of understanding, the settlement agreement contains the plaintiff's agreement to arbitrate the foremen's dispute. We agree with the plaintiff.
"[A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . Because arbitration is based on a contractual relationship, a party who has not consented cannot be forced to arbitrate a dispute." (Citation omitted; internal quotation marks omitted.) MBNA America Bank, N.A. v. Boata, supra, 283 Conn. at 386, 926 A.2d 1035. Nevertheless, "[b]ecause we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the positive assurance test as set out in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Under this test, judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Internal quotation marks omitted.) Board of Education *154 v. Wallingford Education Assn., 271 Conn. 634, 639, 858 A.2d 762 (2004).
In analyzing the plaintiff's claims, the Appellate Court concluded that, "[a]lthough the parties originally stated that arbitration would not be used to redress the issue of upgrades, they later signed. . . [the] settlement agreement. . . ." New Britain v. AFSCME, Council 4, Local 1186, supra, 121 Conn.App. at 570, 997 A.2d 560. On the basis of its reading of the settlement agreement, the Appellate Court concluded that, "eight months after agreeing that arbitration should not be used to redress the upgrades, [the plaintiff] agreed to arbitrate the foremen's grievance. . . ." Id. The Appellate Court thus concluded that it could not say "with positive assurance that the parties intended to exclude the issue from arbitration." Id. Upon review of the contested documents, we agree that the parties agreed initially in the memorandum of understanding not to arbitrate the foremen's dispute, but we disagree that the settlement agreement prevents us from concluding with positive assurance that the plaintiff never agreed to arbitration.
Specifically, we note that the memorandum of understanding contained an agreement between the parties that "arbitration [would] NOT be used to redress all upgrades that ha[d] not been resolved in the negotiations." The parties thus explicitly agreed not to arbitrate any disputes involving upgrades that were not the subject of the negotiations memorialized in the memorandum of understanding. Because the foremen were not upgraded in these negotiations, their pay differential dispute falls within the class of disputes that the parties specifically agreed not to arbitrate.
Subsequently, in the settlement agreement the parties agreed that "the defendant may file a grievance regarding the issue of [f]oremen being paid less than 5 [percent] more than their subordinates." The agreement further provides that the grievance could be filed directly at arbitration, and that "either party may raise any claim or defense they could have made had they filed at step [one], including the issue of arbitrability but not including timeliness." Although the first clause in this settlement agreement indicated that the parties agreed that the defendant could file a grievance directly in arbitration, it clearly provides that the plaintiff did not concede the issue of arbitrability. Furthermore, reading the settlement agreement in its entirety, the second clause actually indicates that the plaintiff intended to preserve the defense of nonarbitrability, presumably because it planned to continue asserting that claim. We thus conclude that the settlement agreement, by its plain language, did not alter the parties' agreement to avoid arbitration that was contained in the memorandum of understanding, but, rather, preserved the plaintiff's right to assert its defense of nonarbitrability. Because the plaintiff did not agree to arbitrate the foremen's dispute, it could not be compelled to submit to arbitration.
The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to grant the plaintiff's application to vacate the arbitration award.
In this opinion NORCOTT, ZARELLA and McLACHLAN, Js., concurred.
HARPER, J., with whom, PALMER, J., joins, dissenting.
In considering whether the plaintiff, the city of New Britain, was entitled to have the arbitration award in favor of the *155 defendant, AFSCME, Council 4, Local 1186, vacated on the ground that the issue of foremen pay upgrades was not arbitrable, the majority applies de novo review, notwithstanding the fact that the parties unmistakably agreed to empower the arbitration panel (arbitrators) to resolve their disagreement as to whether the defendant's grievance is arbitrable. The parties signed a document clearly and unmistakably manifesting this intention, and the plaintiff has never suggested thereafter that the arbitrators were not authorized to resolve their dispute over arbitrability. Instead of construing these essential facts in light of their self-evident meaning, the majority determines that the parties did not authorize the arbitrators to decide whether the dispute was arbitrable because the document does not contain certain talismanic language of authorization. Reviewing the arbitration question de novo, the majority then concludes that the Appellate Court improperly determined that the issue of foremen pay upgrades is arbitrable, thereby failing to give legal effect to the parties' conduct or to afford the arbitrators' decision the level of judicial deference required by our case law and General Statutes § 52-418.[1] Because, under the proper standard of review, it cannot be said that the arbitrators "exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made"; General Statutes § 52-418(a)(4); I must respectfully dissent.

I
The plaintiff seeks to vacate the arbitration award in favor of the defendant on the ground that the dispute between the parties, namely, whether the plaintiff violated the collective bargaining agreement by failing to upgrade the position of foremen to conform with civil service rules requiring foremen to be paid at least 5 percent more than their subordinates, is not arbitrable.[2] I agree with the majority regarding the basic legal principles that are implicated when such a dispute arises. Where the majority and I depart is in the application of those principles to the clear facts in the present case. I briefly summarize those principles and then turn to the relevant facts.
A determination of whether an issue is arbitrable can implicate three related questions: "(1) whether the matter is arbitrable; *156 (2) who has primary authority to decide that questionthe arbitrator or the court; and (3) if the matter is one over which the court would have primary authority, did the parties engage in, or fail to engage in, conduct that precludes judicial review of the arbitrator's decision on that matter."[3]Bacon Construction Co. v. Dept. of Public Works, 294 Conn. 695, 709-10, 987 A.2d 348 (2010). With respect to the question of who has primary authority to determine arbitrability, it is a well settled principle that "[w]hether a particular dispute is arbitrable is a question for the court, unless, by appropriate language, the parties have agreed to arbitrate that question, also." (Emphasis in original; internal quotation marks omitted.) Id., at 714, 987 A.2d 348; see also Connecticut Union of Telephone Workers, Inc. v. Southern New England Telephone Co., 148 Conn. 192, 197, 169 A.2d 646 (1961) ("[w]hether the parties have agreed to submit to arbitration not only the merits of the dispute but the very question of arbitrability, as well, depends upon the intention manifested in the agreement they have made"). Elaborating on the proper method for determining whether the parties have chosen to empower the arbitrator to determine arbitrability, this court has held that "[t]he intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of arbitration, such as all questions in dispute and all claims arising out of the contract or any dispute that cannot be adjudicated." (Internal quotation marks omitted.) White v. Kampner, 229 Conn. 465, 472, 641 A.2d 1381 (1994).
This specific principle proceeds from a general recognition that "[a]rbitration is a creature of contract between the parties and its autonomy requires a minimum of judicial intrusion. . . . The parties themselves, by the agreement of the submission, define the powers of the arbitrator." (Internal quotation marks omitted.) Office of Labor Relations v. New England Health Care Employees Union, District 1199, AFL-CIO, 288 Conn. 223, 228-29, 951 A.2d 1249 (2008).
Therefore, we must consider whether, in the present case, the parties contractually agreed to submit to the arbitrators their dispute as to whether the foremen pay upgrades is arbitrable. Because the parties executed several agreements, I briefly outline the course of the parties' dealings as revealed by the following undisputed facts in the record. First, the parties entered into a collective bargaining agreement, which provides for a multi step internal grievance procedure and for arbitration of grievances on which satisfactory resolution has not been reached; both procedures must be initiated within specified time limits. Article XIV, § 14.8, of the collective bargaining agreement *157 provides: "The grievance procedure shall be the sole method of processing claims concerning rights and/or privileges provided herein or concerning interpretation or application of provisions of this [a]greement." The collective bargaining agreement further provides in article XIV, § 14.9(F), that, effective upon a specified date, "the parties agree that arbitration shall be used to redress all upgrades that have not been resolved in negotiations." Several years after that collective bargaining agreement went into effect, the parties entered into negotiations that ultimately led to pay upgrades for certain positions. After these negotiations, the parties signed a memorandum of understanding setting forth those upgrades and further providing: "The parties agree that arbitration shall NOT be used to redress all upgrades that have not been resolved in negotiations."
Thereafter, the defendant filed an unfair labor practice complaint with the state board of labor relations, claiming that the plaintiff had failed to bargain in good faith by violating the collective bargaining agreement because the recent pay upgrades had resulted in a violation of the city's civil service rules, which the defendant contended had been incorporated into the collective bargaining agreement, requiring that foremen (whose pay had not been the subject of negotiation and had not been upgraded) be paid at least 5 percent more than subordinates. Weeks later, while that complaint was pending, the parties entered into a settlement agreement, which provides as follows: "The [plaintiff] hereby agrees that [the defendant] may file a grievance regarding the issue of [f]oremen being paid less than 5 [percent] more than their subordinates. This [g]rievance shall be filed directly to arbitration.
"The [plaintiff] and [the defendant] further agree that either party may raise any claim or defense they could otherwise have made had they filed at step [one], including the issue of arbitrability but not including timeliness.[4]
"In consideration of the above, the [defendant] agrees to the withdrawal and closing of [the unfair labor practice complaint]." (Emphasis added.)
It is clear that neither the collective bargaining agreement nor the memorandum of understanding vests the arbitrators with authority to decide a dispute as to arbitrability.[5] The text of the settlement *158 agreement, however, cannot be mistaken for anything other than a declaration by the parties that the issue of arbitrability should be resolved by the arbitrators. As the parties agreed, the defendant "may file a grievance . . . [that] shall be filed directly to arbitration." To state the obvious, this language establishes that the parties agreed to present some issue to the arbitrators. Dispelling any uncertainty regarding the scope of the submission to the arbitrators, the settlement agreement sets forth the specific dispute and further provides, immediately after providing for the matter to be filed directly to arbitration, that either party may raise otherwise available defenses "including the issue of arbitrability . . . ." (Emphasis added.) This latter provision of the settlement agreement highlights the fact that the plaintiff did not believe that the merits of the defendant's grievance properly could be arbitrated, but it also makes abundantly clear that the defense of nonarbitrability was intended to be raised and decided, in the first instance, by the arbitrators.
The unusual specificity and concreteness of the settlement agreement sets this case apart in an important respect from the usual arbitration clause. The majority has cited First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), for the principle that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is `clea[r] and unmistakabl[e]' evidence that they did so."[6] I highlight that case not only because I believe this principle to be sound but also because it is useful to understand the policy concerns behind the principle. Per First Options of Chicago, Inc., a heightened clarity requirement is appropriate because, unlike the question of what types of disputes should be arbitrated, "[a] party often might not focus upon [who (primarily) should decide arbitrability] or upon the significance of having arbitrators decide the scope of their own powers." Id., at 945, 115 S.Ct. 1920. In the present case, however, the settlement agreement is both perfectly *159 clear and unusually attentive not only to the narrow issue in dispute but also to the question of who should decide the arbitrability of that dispute; the agreement's sole function was to submit to the arbitrators a limited set of disputes, one of which is arbitrability. Thus, there can be no question that the concern underlying the heightened clarity requirement enunciated in First Options of Chicago, Inc., has been satisfied in the present case.
Reinforcing the clear significance of the text of the settlement agreement, the course of the parties' dealings in this case forecloses any conclusion other than that the parties intended to submit to the arbitrators the issue of arbitrability. The settlement agreement brought to a close formal proceedings initiated by the defendant and moved the dispute to a new forum arbitrationfor resolution. To infer from this course of events that the parties intentionally transferred their dispute from a forum that was able to resolve the defendant's grievance to a forum that they knew was incapable of resolving even the threshold issue in that matter is to foist on the parties an intent that they could not possibly, in good faith, have held.[7]
Finally, I draw attention to the course of litigation in the present case. Not only has the plaintiff consistently framed its contentions in a manner that unequivocally demonstrates that it does not challenge the arbitrators' authority to decide the question of arbitrability, the plaintiff also has made judicial admissions attesting to this grant of authority. Specifically, in its application to vacate the arbitration award submitted to the trial court, the plaintiff stated: "[O]n August 3, 2007, the parties submitted the issue of arbitrability to the arbitrator[s]." (Emphasis added.) In that application to vacate, the plaintiff further contended that, because the grievance was not arbitrable under the memorandum of understanding, "[t]he [arbitrators], by retaining jurisdiction of the award, did not issue a final and definite award as required by [§ 52-418]." (Emphasis added.) The plaintiff's latter assertion clearly presupposes that the arbitrators possessed initial "jurisdiction"[8] to determine the threshold question of whether the merits of the plaintiff's grievance could be arbitrated. These express admissions, moreover, accord with the manner in which the plaintiff has presented its claims throughout *160 the litigation process. At no point not before the arbitrators, not before the trial court, not before the Appellate Court, not before this courthas the plaintiff ever contended that the arbitrators lacked contractual authority to resolve the issue of arbitrability.[9]
I recognize that the settlement agreement lacks some of the linguistic hallmarks of agreements that have been found to clearly and unmistakably vest the arbitrator with authority to arbitrate arbitrability. The settlement agreement does not vest the arbitrator with authority to resolve "any and all" disputes; see footnote 5 of this dissenting opinion; or provide that the grievance shall be "decided," "resolved" or "adjudicated" by the arbitrators or "committed to" the panel.[10] Nor does the settlement agreement contain an express provision that the arbitrator has authority to decide its own "jurisdiction."[11] See footnote 7 of this dissenting opinion. Such agreements, however, have not been drafted by parties considering the specific question of whether a narrow issue in dispute should be arbitrated. A contextual and common sense reading of the settlement agreement, as well as the plaintiff's judicial admissions as to the arbitrators' authority, compels a conclusion that the parties clearly and unmistakably committed the question of arbitrability to the arbitrators. To conclude otherwise, as has the majority, would not only elevate form over substance but also would assume and reward the plaintiff's bad faith in inducing the defendant to withdraw the matter from a competent forum to one wholly lacking authority.

II
Having concluded that the arbitrators were contractually authorized to determine whether the defendant's grievance was arbitrable, I turn to the plaintiff's claim that the Appellate Court improperly affirmed the trial court's judgment denying the plaintiff's motion to vacate the award on the ground that the dispute at issue was not arbitrable. Specifically, the plaintiff contends: (1) in light of the memorandum of understanding expressly stating that "arbitration shall NOT be used to redress *161 all upgrades that have not been resolved in negotiations," the Appellate Court should have concluded that the arbitrators exceeded their authority in violation of § 52-418(a)(4) by determining that the dispute was arbitrable; and (2) in reaching a contrary conclusion on the basis of the settlement agreement, the Appellate Court disregarded the plaintiff's reservation of its right to assert the defense of nonarbitrability. I agree with the plaintiff's secondary contention, but disagree with its primary claim. Although the Appellate Court properly recognized the obviousthat the settlement agreement vested the arbitrators with authorityin so concluding, it appears to have conflated the distinct inquiries into the arbitrators' authority to decide the merits of the dispute and its authority to decide whether the dispute is arbitrable and, in so doing, applied an improper standard of review. Nonetheless, I agree with the Appellate Court's conclusion that the plaintiff is not entitled to have the award vacated, though I reach that conclusion by a different route.
The Appellate Court, like the majority in this certified appeal, applied the positive assurance test in reaching its conclusion. Under that test, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Internal quotation marks omitted.) White v. Kampner, supra, 229 Conn. at 473, 641 A.2d 1381, quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The positive assurance test is applied, however, when courts determine, in the first instance, whether a dispute is arbitrable. See, e.g., Board of Education v. Nonnewaug Teachers' Assn., 273 Conn. 28, 30-32, 866 A.2d 1252 (2005) (action for declaratory judgment that dispute is not arbitrable); White v. Kampner, supra, at 472-73, 641 A.2d 1381 (motion to vacate award where court determined that arbitrator lacked authority to determine arbitrability); Welch Group, Inc. v. Creative Drywall, Inc., 215 Conn. 464, 467, 576 A.2d 153 (1990) (plaintiff's application for injunction restraining defendant from proceeding with arbitration); John A. Errichetti Associates v. Boutin, 183 Conn. 481, 488-89, 439 A.2d 416 (1981) (plaintiff's application for order directing defendant to proceed with arbitration); Board of Education v. Frey, 174 Conn. 578, 581-82, 392 A.2d 466 (1978) (action for injunction staying arbitration). That test is inapplicable when the threshold question of arbitrability has been committed to the arbitrator. See Bridgeport v. Bridgeport Police Local 1159, AFSCME, Council 15, 183 Conn. 102, 106, 438 A.2d 1171 (1981) ("[o]nce the trial court has determined that arbitrability is to be decided by the arbitrators, there is no need for it to apply the `positive assurance' test").
When the parties have agreed to vest the arbitrator with primary authority to decide whether the dispute is arbitrable, as in the present case, we generally defer to the arbitrator's determinations of fact and law, vacating the award only on narrow grounds.[12] As the United States Supreme *162 Court explained in First Options of Chicago, Inc. v. Kaplan, supra, at 942, 115 S.Ct. 1920: "[The parties] disagree about who should have the primary power to decide [whether the dispute is arbitrable]. Does that power belong primarily to the arbitrators (because the court reviews their arbitrability decision deferentially) or to the court (because the court makes up its mind about arbitrability independently)? ... Although the question is a narrow one, it has a certain practical importance. That is because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute (say, as here, its obligation under a contract). But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value. The party still can ask a court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances. See, e.g., 9 U.S.C. § 10 (award procured by corruption, fraud, or undue means; arbitrator exceeded his powers); Wilko v. Swan, 346 U.S. 427, [436-37, 74 S.Ct. 182, 98 L.Ed. 168] (1953) (parties bound by arbitrator's decision not in `manifest disregard' of the law), overruled on other grounds, Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 [109 S.Ct. 1917, 104 L.Ed.2d 526] (1989). Hence, whocourt or arbitratorhas the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." See also AFSCME, Council 4, Local 1565 v. Dept. of Correction, 298 Conn. 824, 835, 6 A.3d 1142 (2010) (citing "three recognized grounds for vacating an award: [1] the award rules on the constitutionality of a statute ... [2] the award violates clear public policy ... or [3] the award contravenes one or more of the statutory proscriptions of § 52-418[a]" [internal quotation marks omitted]).
The plaintiff cites § 52-418(a)(4) as the basis for its application to vacate, under which "the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The plaintiff's central complaint is that the arbitrators exceeded their power by forcing the parties to arbitrate the issue of foremen's pay when the parties had signed a memorandum of understanding, following a round of wage negotiations, agreeing "that arbitration shall NOT be used to redress all upgrades that have not *163 been resolved in negotiations."[13] The plaintiff points to an Appellate Court case in which that court had stated the principle that "an arbitrator cannot find a dispute arbitrable if language in the contract indicates that it is not"; Wallingford v. Wallingford Police Union, Local 1570, 45 Conn.App. 432, 437, 696 A.2d 1030 (1997); and concluded that the collective bargaining agreement could not reasonably have been given any other interpretation than to exclude the issue on which the defendant had sought arbitration. Id. The plaintiff cannot prevail on this claim.
The plaintiff's claim suffers from several fatal defects. First, "[w]e have explained that, [i]n our construction of § 52-418(a)(4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." (Internal quotation marks omitted.) Harty v. Cantor Fitzgerald & Co., 275 Conn. 72, 84, 881 A.2d 139 (2005); see also Board of Education v. AFSCME, Council 4, Local 287, 195 Conn. 266, 271, 487 A.2d 553 (1985) ("[t]he memorandum of decision may ... be examined to determine if an arbitrator has exceeded his or her authority by making an award beyond the scope of the submission"). The plaintiff does not contend, however, that the award fails to conform to the submission, and there appears to be no basis to make such an assertion. See footnote 2 of this dissenting opinion. Ordinarily, if an issue is submitted to an arbitrator, this court will not second-guess the reasoning behind the arbitrator's resolution of that issue. Garrity v. McCaskey, 223 Conn. 1, 12, 612 A.2d 742 (1992) ("[a]n award conforming to an unrestricted submission should generally be confirmed by the court").[14]
Second, the Wallingford case and the others cited by the plaintiff in its brief to this court are inapposite. In those cases, the court had applied the positive assurance test to determine whether the dispute was arbitrable. See, e.g., Wallingford v. Wallingford Police Union, Local 1570, 45 Conn.App. 432, 437, 696 A.2d 1030 (1997). For the reasons I previously have set forth, that test is not applicable in the present case.
Third, it is clear that in reaching its decision, the arbitrators attempted to ascertain the parties' intent in drafting the memorandum of understanding. The arbitrators found as follows: "A reading of the January 19, 2006 [m]emorandum of [u]nderstanding providing the upgrades clearly shows that no [f]oremen positions were at issue in the upgrades. Nor is there testimony that at anytime the parties discussed the upgrading of [f]oremen during the upgrade negotiations. It is very questionable whether the prohibition against the use of arbitration was meant to concern the unforeseen consequences of an automatic upgrade to the [foremen through reliance *164 on the [c]ivil [s]ervice [r]ules."[15] (Emphasis added.) Thus, it plainly appears that the arbitrators concluded, as a matter of contract interpretation, that the memorandum of understanding was inapplicable to an upgrade that is mandated, rather than subject to negotiation. This court has explained: "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." (Internal quotation marks omitted.) Board of Education v. AFSCME, Council 4, Local 287, supra, 195 Conn. at 273, 487 A.2d 553; accord Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (explaining that "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively `dispense[s] his own brand of industrial justice' that his decision may be unenforceable"). Review of the arbitration decision reveals no such blatant disregard for the contract and reliance on the arbitrators' own view of public policy, but, rather, a different construction of the document on which the plaintiff relies. "With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir.2010). Thus, whether the arbitrators' decision is well reasoned or correct is not for me, or for this court, to decide. Accordingly, the Appellate Court properly affirmed the trial court's judgment denying the plaintiff's motion to vacate the award.
I respectfully dissent.
NOTES
[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the issue of the foremen's pay differential was arbitrable?" New Britain v. AFSCME, Council 4, Local 1186, 298 Conn. 903, 3 A.3d 69 (2010).
[2] The defendant appears in this case on behalf of the foremen whose pay is at issue.
[3] The list of employees receiving upgrades was attached to the parties' memorandum of understanding and is thus contained in the record. At oral argument in this court, the plaintiff explained that the foremen were not discussed during the negotiations leading up to the memorandum of understanding. The defendant acknowledges this fact in its brief as well, as it provides, "[t]he memorandum [of understanding] does not apply to the foremen's pay issue as they were not apart of the negotiations that resulted in the memorandum." (Emphasis added.)
[4] General Statutes § 52-418(a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
[5] As set forth in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), judicial review under the positive assurance test must be "strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
[6] Significantly, the defendant does not claim that it had no obligation to satisfy the condition precedent contained in the collective bargaining agreement. Indeed, it could not so claim, in light of the arbitrators' determination, during phase two, that the collective bargaining agreement and the civil service rules do not conflict and therefore both apply in the present case. Consistent with this conclusion, the defendant specifically indicated that, "[p]ursuant to the parties' collective bargaining agreement, [the alleged violation of the civil service rule] led to the filing of . . . a prohibited practice complaint [by the foremen]." (Emphasis added.) The defendant further explains that, in accordance with the settlement agreement, "[p]ursuant to [a]rticle XIV of the parties' collective bargaining agreement, a grievance [in arbitration] was filed." (Emphasis added.)
[7] Our standard of review of motions to vacate an arbitration award under § 52-418(a)(4) is well established: "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418(a)(4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) McCann v. Dept. of Environmental Protection, 288 Conn. 203, 220, 952 A.2d 43 (2008).
[8] Although these three inquiries are inextricably linked, we note that most cases like the present one require appellate courts to examine them out of order. Appellate courts must first examine the second and third inquiries in order to determine whether they should review the question of arbitrability de novo. Only after determining the appropriate standard of review should an appellate court turn to the first question of whether the parties intended to arbitrate the particular dispute at issue.
[9] Unlike the question of whether the foremen's dispute is arbitrable, this preliminary inquiry into whether the parties submitted that question for the arbitrator's sole determination is one we review de novo. In reviewing this question, we note that our preliminary inquiry into the standard of review is not dictated by the positive assurance test. See footnote 5 of this opinion.
[10] The dissent places much significance upon two statements in the settlement agreement, namely, that the "grievance shall be filed directly [in] arbitration," and that "either party may raise any claim or defense . . . including the issue of arbitrability. . . ." We disagree that these statements clearly and unmistakably demonstrate an intent by the parties to submit the question of arbitrability to the arbitrator's sole determination. The former evidences the parties' intent to submit the underlying dispute regarding the foremen's pay differential to the arbitrator solely in the event that the dispute is deemed arbitrable in the first place. The latter, meanwhile, does not in any way indicate who has the authority to decide the question of arbitrability, but merely preserves the parties' ability to raise that issue as a defense.
[11] In response to the dissent's statement that "the majority determines that the parties did not authorize the arbitration panel to decide whether the dispute was arbitrable," we clarify that, although arbitrability was one of the two issues that the parties submitted to the arbitrators, that submission did not give the arbitrators the authority to decide that issue conclusively without judicial review of its determination on appeal. "We have long recognized two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. . . . A party initially may refuse to submit to an arbitration and instead compel a judicial determination of the issue of arbitrability. . . . Alternatively, the issue of arbitrability may properly be left to an arbitrator or arbitration panel for a determination. . . . In the latter situation, a court may properly entertain a challenge to an award alleging disregard of the limits of the parties' agreement with respect to arbitration." (Citations omitted; internal quotation marks omitted.) MBNA America Bank, N.A. v. Boata, supra, 283 Conn. at 392, 926 A.2d 1035. In other words, a claim that a dispute is not subject to arbitration may be submitted to the arbitrator without waiving the claim that the court has the primary authority to determine arbitrability. We thus conclude that the parties' submission of the question of arbitrability to the arbitrators is not dispositive in the present case.

Finally, the dissent contends that the plaintiff never claimed that the board was not authorized to decide finally the question of arbitrability and, indeed, that the plaintiff has made judicial admissions that the board had such authority. With respect to the plaintiff's purported admissions, as we have indicated, submission of the question of arbitrability to the arbitrator in the first instance does not constitute an admission that the arbitrator has the authority to decide that issue finally, without de novo review by the court. With respect to the dissent's contention that the plaintiff has never raised the claim that the issue of arbitrability was to be decided by the trial court rather than the arbitrator, we note that, as the dissent recognizes, the plaintiff did claim on appeal that this court should apply the positive assurance test, which is applicable only when the court has the primary authority to decide arbitrability. Accordingly, we conclude that the claim is fairly before us.
[1] General Statutes § 52-418(a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects; (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." The plaintiff seeks to vacate the award on the basis of § 52-418(a)(4).
[2] The issues identified by the arbitrators in their interim award and award as those submitted to it, respectively, were: (1) "Is [c]ase [number] 2007-A-0214 [assigned to the grievance] arbitrable?"; and (2) "Did the [plaintiff] violate [§§] 11.0 and or 2.0 of the collective bargaining agreement by not upgrading the position of [f]oreperson? If so, what shall the remedy be?" As the plaintiff has never contended that the arbitrators exceeded the scope of the submission, I presume that the issues stated in the awards accurately reflect those submitted for the arbitrators' consideration.
[3] Because I conclude that the parties have contractually agreed that the arbitrators will decide the issue of arbitrability, thus satisfying prong two, I do not reach the further question of whether the plaintiff has waived judicial review of this issue. The question of waiver can arise only when the dispute being arbitrated is otherwise a matter for the court to decide; Bacon Construction Co. v. Dept. of Public Works, 294 Conn. 695, 709, 987 A.2d 348 (2010); a condition that is not met in the present case because the parties have agreed to empower the arbitrators to resolve the issue of arbitrability. I note, however, that, even if the settlement agreement plausibly could be deemed to fall short of the clear language necessary to contractually vest the arbitrators with authority to decide arbitrability, a dubious supposition, that agreement and the plaintiff's subsequent conduct undoubtedly would qualify as clear evidence that the plaintiff "agree[d] to vest the arbitrator with authority to decide that issue"; id., at 710, 987 A.2d 348; thereby waiving de novo judicial review of the question of arbitrability.
[4] Article XIV, § 14.1, of the collective bargaining agreement provides with respect to commencement of the internal grievance process: "No grievance may be filed after fifteen (15) working days of the event giving rise to it." That article further provides in § 14.3 that the defendant must receive written notice of an intention to submit the grievance to arbitration within twenty days after an adverse decision or the expiration of the time limits for a decision on the grievance to be rendered. The memorandum of understanding that resulted in the violation of the civil service rule regarding pay differential was executed on January 19, 2006. The only grievance in the record before this court is one filed with the plaintiff's personnel director received on September 29, 2006.
[5] Although the collective bargaining agreement provided for arbitration of any grievance, a term defined as "a claim by an employee or the [u]nion that rights under the specific language of this [a]greement have been violated, or that there has been a misinterpretation or misapplication of the specific provisions of this [a]greement," courts have held that authority linked to interpretation of the contract is not clear and unmistakable evidence of intent to vest the arbitrator with authority to decide whether a matter is arbitrable. See, e.g., Peabody Holding Co., LLC v. United Mine Workers of America, 665 F.3d 96, 102 (4th Cir.2012) ("an arbitration clause committ[ing] all interpretive disputes relating to or arising out of the agreement does not satisfy the clear and unmistakable test" [internal quotation marks omitted]); Spahr v. Secco, 330 F.3d 1266, 1270 (10th Cir.2003) ("broad provisions to arbitrate all disputes arising out of or relating to the overall contract, like the one at issue here, do not provide the requisite clear and unmistakable evidence within the four corners of the . . . [a]greement that the parties intended to submit the question of whether an agreement to arbitrate exists to an arbitrator" [internal quotation marks omitted]); McLaughlin Gormley King Co. v. Terminix International Co., L.P., 105 F.3d 1192, 1194 (8th Cir. 1997) (arbitration clause did not clearly and unmistakably evidence parties' intent to give arbitrator power to determine arbitrability where clause did not mention "controversy over arbitrability" [internal quotation marks omitted]); cf. PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1199-1200 (2d Cir. 1996) (provision requiring arbitration of "[a]ny and all controversies" indicates parties' intent to submit to arbitration question of arbitrability [internal quotation marks omitted]); White v. Kampner, supra, 229 Conn. at 472, 641 A.2d 1381 (authority vested in arbitrator when contract uses language "such as all questions in dispute and all claims arising out of the contract or any dispute that cannot be adjudicated" [internal quotation marks omitted]).
[6] The Supreme Court has explained: "In this manner the law treats silence or ambiguity about the question `who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question `whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'for in respect to this latter question the law reverses the presumption." First Options of Chicago, Inc. v. Kaplan, supra, 514 U.S. at 944-45, 115 S.Ct. 1920; see also Paine-Webber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) ("where the arbitration agreement contains an ambiguity as to who determines eligibility, the [Federal Arbitration Act's] presumption favoring arbitration is reversed so that the court will ordinarily decide the question").
[7] Thus, the plaintiff's role in directing the grievance to arbitration renders its position substantively different than a party that plays no role in the commencement of arbitration proceedings, manifests a clear intention to resist arbitration, and appears in the arbitral forum for the sole purpose of asserting its defense of nonarbitrability. See Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362, 369 (2d Cir.2003) ("The Supreme Court has held that `merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue.' First Options of Chicago [Inc.] v. Kaplan, [supra, 514 U.S. at 946, 115 S.Ct. at 1925]. To the contrary, the [c]ourt noted in [that case], the fact that a party `forcefully object[s]' to having an arbitrator decide a disputeas [the defendant] clearly didsuggests an unwillingness to submit to arbitration. Id. See also Textile Unlimited v. A..BMH & Co., 240 F.3d 781, 788 [(9th Cir.2001)] [holding that party did not waive right to object to arbitration by participating in arbitration proceedings where the party `only participated in the arbitration to contest the arbitration itself']; Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 n. 10 [(1st Cir.2000)] [holding that party's objection to scope of arbitration was not waived by its participation in hearings because the party `consistently and vigorously maintained its objection to the scope of arbitration'].").
[8] As this court clarified in MBNA America Bank, N.A. v. Boata, 283 Conn. 381, 388-92, 926 A.2d 1035 (2007), arbitrators do not possess subject matter jurisdiction, a term that has a specific significance in court proceedings, but, rather, authority derived from the consent of the parties.
[9] In its brief to this court, the plaintiff does rely on certain appellate cases, and an examination of those cases reveals that the courts had applied the positive assurance test. As I explain in part II of this dissenting opinion, that test applies only when the court has primary authority to decide whether the dispute is arbitrable. For the reasons I previously have set forth, the parties clearly vested the arbitrators with primary authority to decide that question. Even if I were to interpret the plaintiff's reliance on these cases as a vague belated claim on appeal that it did not agree to arbitrate the issue of arbitrability, the plaintiff's role in directing the grievance to arbitration would preclude it from successfully advancing such a claim. Cf. PowerAgent, Inc. v. Electronic Data Systems Corp., 358 F.3d 1187, 1192 (9th Cir.2004) ("PowerAgent [Inc.] was the plaintiff in arbitration and affirmatively sought to submit the issue of arbitrability to the arbitration panel, arguing in favor of the arbitrators' authority to decide the issue. . . . Having affirmatively urged the arbitrators to decide arbitrability and asserted their authority to do so, PowerAgent [Inc.] cannot await the outcome and, after an unfavorable decision, challenge the authority of the arbitrators to act on that very issue.").
[10] See, e.g., Rent-A-Center, West, Inc. v. Jackson, ___ U.S. ___, 130 S.Ct. 2772, 2779, 177 L.Ed.2d 403 (2010); Carson v. Giant Food, Inc., 175 F.3d 325, 331-32 (4th Cir.1999); Telectronics Pacing Systems v. Guidant Corp., 143 F.3d 428, 431 (8th Cir.1998); Bacon Construction Co. v. Dept. of Public Works, supra, 294 Conn. at 711, 987 A.2d 348.
[11] See Qualcomm, Inc. v. Nokia Corp., 466 F.3d 1366, 1372-73 (Fed.Cir.2006) (parties' agreement incorporated American Arbitration Association rules that expressly provided arbitration panel had power to rule on own jurisdiction).
[12] In the present case, the trial court properly recognized that a more deferential standard of review was required, also apparently recognizing that the settlement agreement conferred authority on the arbitrators. In particular, the court noted: "In Costello Construction [Corp.] v. Teamsters Local 559, 167 Conn. 315, 318, 355 A.2d 279 (1974), the court held that where the parties have submitted the issue of arbitrability to the arbitrator for determination, the court is bound by the arbitrator's determination unless that determination clearly falls within the proscriptions of [§ 52-418], or procedurally violates the parties' agreement." (Emphasis added.) Because the trial court viewed the plaintiff's claims as essentially charging the arbitrators with making "erroneous legal interpretation[s]," it concluded that such a claim was not a proper basis to vacate the award under § 52-418(a)(4). I note that this court has "overrule[d] the statement in Costello [Construction Corp.] implying that the review of the procedural determination of an arbitrator is not restricted by the criteria established by § 52-418." East Hartford v. East Hartford Municipal Employees Union, Inc., 206 Conn. 643, 650, 539 A.2d 125 (1988).

The Appellate Court did not explain why it had applied a different standard of review than the trial court and did not state a conclusion as to whether the question of arbitrability itself had been committed to the arbitrators, although it quoted case law stating that such authority may be committed to the arbitrators. The fact that the Appellate Court failed to give any legal effect to the settlement agreement's express reservation of the plaintiff's right to assert the defense of nonarbitrability suggests that the court may have conflated the question of whether the arbitrators were empowered to decide arbitrability, under which the defendant's reservation of that defense would not bar the exercise of authority, and the merits of the arbitrability question, under which such a fact could be dispositive.
[13] I agree with the majority that the plaintiff waived any claim regarding the existence of a condition precedent to arbitration that had not been metnegotiationby failing to assert this claim prior to its appeal to this court, and I therefore also do not consider its merits.
[14] The court in Garrity v. McCaskey, supra, 223 Conn. at 5, 612 A.2d 742, further explained that "[t]he authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." In the present case, the submission provides for certain defenses to be available at arbitration, but it reserves no explicit rights from the submission, and it makes no mention of court review. The submission is therefore plainly unrestricted, and neither party has suggested otherwise.
[15] In addition to the arbitrators' reasoning, I note that, although it is unmistakable from the text of the memorandum of understanding that the parties intended to impose an unconditional ban on arbitration, its reference to "all upgrades that have not been resolved in negotiation" creates an ambiguity with respect to the scope of that ban. Specifically, it is not clear whether the memorandum of understanding applies only to a limited set of upgrades that were the subject of previous, unresolved, negotiations or whether it applies to all possible upgrades, even those that were not addressed in the negotiations leading to the settlement agreement. For both that reason and the one articulated by the arbitrators, even if I were to agree with the majority that the positive assurance test applies, I would be compelled to conclude that the presumption in favor of arbitration has not been overcome.